```
              IN THE UNITED STATES DISTRICT COURT
               FOR THE SOUTHERN DISTRICT OF OHIO
                         EASTERN DIVISION
```

John Johnson,                      :

      Plaintiff,               :

   v.                              :        Case No. 2:09-cv-0917

Volvo Parts North America,         :        Magistrate Judge Kemp
et al.,

      Defendants.              :

## OPINION AND ORDER

Defendant Volvo Parts North America ("Volvo") has filed a motion for summary judgment on plaintiff John Johnson's amended complaint for unlawful retaliation in violation of the Family and Medical Leave Act ("FMLA"). Mr. Johnson opposes the motion. For the following reasons, because a reasonable trier of fact could decide this case in Mr. Johnson's favor, the Court will deny the motion (#27).

### I. Factual Background

The Court draws on the parties' summary judgment filings and the attachments to them, including depositions and affidavits, for this statement of facts. As discussed in the following section, because the case is before the Court by way of Volvo's summary judgment motion, the Court is required to view the facts in the light most favorable to Mr. Johnson, the non-moving party.

Mr. Johnson is a warehouse worker. He began his employment at Volvo in October 1997. He was trained on all the different machinery in the warehouse and for the first several years primarily drove a sit-down forklift. During his last two or three years at Volvo, he operated a stand-up forklift commonly known as a reach truck. When a third-shift position opened in 2005, he successfully bid on it so he could be home during the day while his wife attended nursing school. Neil Morey was his

supervisor for nearly the entire time he worked third shift.

Dr. Gerald French has been Mr. Johnson's physician for more than twenty years.  In 1999, Dr. French first diagnosed Mr. Johnson as suffering from anxiety and depression.  Based on that diagnosis, Dr. French certified Mr. Johnson's need for intermittent leave under the FMLA.  For the next several years, Mr. Johnson exercised his right to FMLA leave on a regular basis.

Volvo fired Mr. Johnson in 2005, claiming that he had fraudulently taken FMLA leave.  At least according to Volvo, that decision was made after Mr. Johnson was seen eating at a restaurant while on leave.  Volvo claimed that someone who needed to take a day off work due to depression and anxiety could not have been well enough to eat at a restaurant.  Mr. Johnson's union filed a grievance on his behalf, and eventually Volvo reinstated him with back pay.

On January 17, 2007, Mr. Johnson participated in a meeting designed to address certain issues which had arisen with his work.  Although Mr. Johnson could not recall what precipitated the meeting, according to Elaine Wise, the Director of Operations for Volvo Parts North America, he had been sent home the previous day for behaving irrationally at work.  At the meeting, Volvo had Mr. Johnson sign a document entitled "Conditions of Continued Employment for John M. Johnson."  In that document, Mr. Johnson agreed to participate in the company-sponsored Employee Assistance Program and to follow the EAP counselor's recommended treatment program.  Volvo agreed to pay Mr. Johnson for the balance of his shift on January 16, 2007, and January 17, 2007, and up to two additional workdays if the counselor determined at his initial appointment that he was fit for duty.  The document further stated that Mr. Johnson's failure to comply with any of the conditions would result in his termination.  (Johnson Deposition Exhibit F).

According to Mr. Johnson's affidavit, which is attached to his response (#28) to the summary judgment motion, in March 2007, Volvo again tried to fire him for FMLA fraud. A hearing was held on March 14, 2007. Mr. Johnson states that "[t]he evidence adduced at the hearing clearly revealed that I did not use FMLA leave on November 26, 2006," which was apparently the date on which Volvo claimed he took such leave improperly, and that "the suggestion that I fraudulently claimed FMLA leave was nothing but wishful thinking on [Volvo's] part."

On March 1, 2007, a female co-worker named Donna Pack apparently claimed that Mr. Johnson drove his reach truck toward her. In his affidavit and his deposition, Mr. Johnson denied this incident ever occurred. In fact, he stated that if Ms. Pack had made this allegation, that would have constituted a violation of Volvo's work rule 13 (which Volvo later relied on in terminating Mr. Johnson) because the statement was false and disparaging. Volvo apparently met with Mr. Johnson and his union representative on March 6, 2009, and asked for an extension of the disciplinary hearing on this charge so it could finish its investigation. The union refused to agree, so the matter ended without Mr. Johnson's receiving any formal discipline. However, Estella Blake, Volvo's human resources manager, sent him a memorandum dated March 9, 2007, which stated, in part, "This is to notify you that moving, any future violation of work rule 13, will result in discipline for you up to and including immediate termination." (Johnson affidavit, Exhibit A-2). Work rule 13, which was shown to Mr. Johnson at his deposition (Exhibit H), addresses "Verbal or Written Harassment, Intimidation and/or False Statements, Abuse Language" and includes in its description of prohibited actions the "[p]ublishing of false, vicious or malicious statement concerning any co-worker ...." The punishment for a violation of that rule is described as "Verbal

Reprimand to Discharge."

On April 1, 2007, Mr. Johnson received two written warnings based on violations of rule 13 which allegedly happened on March 21, 2007.  See Johnson deposition Exhibits J and K.  Mr. Johnson was accused of harassing Wes Kellogg, a supervisor, and harassing and making false statements concerning John Woods, another employee.  Mr. Johnson denied in his deposition committing either of these infractions, stating that he never spoke to Mr. Woods at all on that day, and that the only word he said to Mr. Kellogg was "damn," a comment he made in response to Mr. Kellogg's asking him "What the F are you looking at?"

On July 25, 2007, according to Mr. Johnson, a co-worker, Brad McNichols, almost ran into him with a reach truck.  Mr. Johnson shouted "near miss" and asked a co-worker, Shay Hamper, if he had seen the incident.  Mr. Johnson testified in his deposition Mr. McNichols had been harassing him for years and had once threatened to "kick his ass."  After the incident with the reach truck, Mr. Johnson immediately complained to his supervisor, Mr. Morey, whom he believed to be a friend of Mr. McNichols; Mr. Morey told him that it was "probably just a close call."  See Johnson affidavit, ¶21.  He also informed another supervisor, Gary Pendergast, of the near miss and left a voice-mail message for Ms. Blake, the HR director, before he left the warehouse.  When Ms. Blake did not promptly return his call, he left a second voice mail from home.  He then went to sleep.  After Mr. Johnson went to sleep, his wife called Ms. Blake and was able to speak with her about the incident.  Ms. Blake said she would look into it.  There was also a discussion about calling the police.  In his deposition, Mr. Johnson stated that Ms. Blake had said that it was "within your rights" to do so.

Because they believed that Volvo's human resources department had not been much help with such incidents in the

-4-

past, Mr. and Mrs. Johnson called Eric Griffin, a detective with the Delaware County Sheriff's Office and an acquaintance of Mrs. Johnson's.  Based on Detective Griffin's advice, Mr. Johnson filed an incident report with the sheriff's office.  He believed at the time, based on what the detective told him, that the Sheriff's office would probably not undertake an actual investigation of his complaint.

By the time Mr. Johnson reported to work on August 2, 2007, the Sheriff's office had already interviewed certain Volvo employees and supervisors at the warehouse.  After conducting this investigation, the Sheriff's office forwarded a report to the Delaware County Prosecutor's Office.  On October 10, 2007, the investigating officer, John Harrington, received a letter from the prosecutor's office informing him that the case would not be presented to the grand jury.  Mr. Johnson received a similar letter from the prosecutor's office shortly before that date.  As a result of the decision not to prosecute, the Sheriff's office closed the case.

At his deposition, Mr. Johnson testified that on the morning of October 16, 2007, Mr. Morey, his supervisor, approached him and said, "Come on with me."  Mr. Johnson was led to Ms. Blake's office in the HR department.  Ms. Blake asked him about the July 25, 2007 incident.  Mr. Johnson gave her his version of the facts.  She then asked him to step outside the room.  When he came back into the room, Mr. Morey stated, "There is nothing else to do with you, John, but to terminate you."  Mr. Morey then signed paperwork (which appears to have been prepared before the meeting) indicating that Mr. Johnson was discharged for violating work rule 13, specifically "publishing of false, vicious or malicious statements concerning any co-worker, management or the company and its products."  No mention was made of the fact that the prosecutor's office had decided not to pursue the case.  Mr.

Johnson had taken FMLA leave the previous day after an extended period of not taking such leave, but that was not mentioned at the meeting.

Mr. Johnson filed a grievance through the union to contest his termination. In his deposition, he testified that his story concerning the near miss was subsequently verified by the union and the company during the arbitration process. However, on December 21, 2007, Rick Nye, the union president, sent plaintiff a letter advising him that the union had decided not to advance the grievance to arbitration. The letter said that the union lacked the credible evidence and witnesses needed to present his case to arbitration. Mr. Johnson testified that the union's decision not to arbitrate resulted from financial considerations because it would have had to front the money to fight his termination. On October 15, 2009, Mr. Johnson commenced this civil action seeking back pay, attorney's fees, costs, reinstatement or front pay, liquidated damages, and any other relief afforded by the FMLA.

## II. Summary Judgment Standard

Summary judgment is not a substitute for a trial when facts material to the Court's ultimate resolution of the case are in dispute. It may be rendered only when appropriate evidentiary materials, as described in Fed. R. Civ. P. 56(c), demonstrate the absence of a material factual dispute and the moving party is entitled to judgment as a matter of law. Poller v. Columbia Broadcasting Systems, Inc., 368 U.S. 464 (1962). The moving party bears the burden of demonstrating that no material facts are in dispute, and the evidence submitted must be viewed in the light most favorable to the nonmoving party. Adickes v. S.H. Kress & Co., 398 U.S. 144 (1970). Additionally, the Court must draw all reasonable inferences from that evidence in favor of the nonmoving party.

United States v. Diebold, Inc., 369 U.S. 654 (1962).  The nonmoving party does have the burden, however, after completion of sufficient discovery, to submit evidence in support of any material element of a claim or defense on which that party would bear the burden of proof at trial, even if the moving party has not submitted evidence to negate the existence of that material fact.  See Celotex Corp. v. Catrett, 477 U.S. 317 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986).  Of course, since "a party seeking summary judgment ... bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact," Celotex, 477 U.S. at 323, the responding party is only required to respond to those issues clearly identified by the moving party as being subject to the motion.  It is with these standards in mind that the instant motion must be decided.

### III. Legal Analysis

The FMLA entitles an eligible employee to take up to twelve weeks of leave during any twelve-month period for a variety of reasons, including "a serious health condition that makes the employee unable to perform the functions of the position of such employee." Arban v. West Pub. Corp., 345 F.3d 390, 400 (6th Cir. 2003)(quoting 29 U.S.C. §2612(a)(1)(D)).  The parties do not dispute that Volvo is a covered employer under the FMLA and that Mr. Johnson's depression and anxiety are serious health conditions under the statute.  See 29 U.S.C. §2611(11)("The term 'serious health condition' means an illness, injury, impairment, or physical or mental condition that involves ... continuing care by a health care provider").

Under 29 U.S.C. §2615, a covered employer is prohibited both from interfering with, restraining, or denying the exercise of

its employees' rights to family and medical leave and from discharging or otherwise retaliating or discriminating against such employees' for opposing unlawful practices under the FMLA. Edgar v. JAC Products, Inc., 443 F.3d 501, 507 (6th Cir. 2006). Thus, there are two distinct theories of recovery on FMLA claims: (1) the "entitlement" or "interference" theory and (2) the "retaliation" or "discrimination" theory. Arban, 345 F.3d at 400-01.

It is evident from both Mr. Johnson's original complaint and his amended complaint that he is proceeding under a retaliation theory. In its summary judgment motion, however, Volvo posits that Mr. Johnson has pleaded separate claims under 29 U.S.C. §2615(a)(1) and 29 U.S.C. §2614(a)(1)(A). Based on that assumption, it argues that Mr. Johnson cannot make out a prima facie case of FMLA interference. In his memorandum in opposition, Mr. Johnson contends that he does, in fact, have an interference claim based on Volvo's "clear interference" with his right to return to work and be restored to his former position. It is apparent, however, that the reason Mr. Johnson is not being restored to his previous position is because Volvo discharged him allegedly in retaliation for using FMLA leave. The Court's analysis will therefore focus on that single claim.

Volvo denies that Mr. Johnson was discharged in retaliation for exercising his rights under the FMLA and argues that the real reason that it fired him is that he violated work rule 13. It is true, as Volvo asserts, that it did not cite his use of FMLA leave as a reason for the termination. That is true in most FMLA cases that get this far in litigation, however, and, as in most cases, the question here is whether there is enough circumstantial evidence of retaliation to allow a jury to find that Volvo fired Mr. Johnson because he had been a frequent user of FMLA leave.

-8-

A. The Prima Facie Case

Because Mr. Johnson is attempting to prove a FMLA violation with indirect evidence, the burden-shifting approach established in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), applies. See Skrjanc v. Great Lakes Power Service Co., 272 F.3d 309, 315 (6th Cir. 2001). Under this analysis, Mr. Johnson must first establish a prima facie case of retaliation in violation of the FMLA. To do this, Mr. Johnson must demonstrate (or at least present facts from which a trier of fact could reasonably infer) that (1) he availed herself of a protected right under the FMLA; (2) he suffered an adverse employment action; and (3) that a causal connection exists between the adverse employment action and the exercise of his rights under the FMLA. See, e.g., Edgar, 443 F.3d at 508; Skrjanc, 272 F.3d at 314. If Mr. Johnson satisfies these three requirements, then the burden shifts to Volvo to proffer a legitimate, nondiscriminatory rationale for the adverse job actions. Id. Once Volvo does this, the burden shifts back to Mr. Johnson to prove (or, in the summary judgment context, adduce facts from which a reasonable person could conclude) that the articulated reason is in reality a pretext to mask discrimination. See Skrjanc, 272 F.3d at 315.

There is no dispute that by qualifying for and using FMLA leave, Mr. Johnson availed himself of a protected right under the FMLA. There is also no dispute that being fired is an adverse employment action. Accordingly, Mr. Johnson easily satisfies the first two requirements of a prima facie case. The parties disagree, however, as to whether Mr. Johnson has come forward with evidence from which a trier of fact could reasonably infer a causal connection between his being fired and his exercise of his right to take FMLA leave.

A causal connection may be established either through direct evidence or knowledge coupled with a closeness in time that

-9-

creates an inference of causation.  See Wrenn v. Gould, 808 F.2d 493, 501 (6th Cir. 1987)(citing Burrus v. United Telephone Co., 683 F.2d 339, 342 (10th Cir. 1982)).  To show a causal link between protected activity and adverse employment action, a plaintiff must demonstrate that use of FMLA leave was a "significant factor" motivating the employer's adverse employment action.  Dage v. Time Warner Cable, 395 F.Supp. 668, 675 (S.D. Ohio 2005): see also Allen v. Dept. of Corrections, 165 F.3d 405, 413 (6th Cir. 1999)(to show a causal connection, a plaintiff must produce evidence to support an inference that adverse employment action was related to protected activity).  "Although no one factor is dispositive in establishing a causal connection, evidence that the defendant treated the plaintiff differently from identically situated employees or that the adverse action was taken shortly after the plaintiff's exercise of protected rights is relevant to causation."  Id.  However, temporal proximity alone is insufficient to support an inference of causation in a case where retaliatory discrimination is alleged. Nguyen v. City of Cleveland, 229 F.3d 559, 563-66 (6th Cir. 2000).

Mr. Johnson contends both that he was treated differently from similarly-situated employees and that his termination occurred one day after he took FMLA leave.  The Court will first examine the temporal proximity issue.

Mr. Johnson argues that when Volvo decided to terminate him on October 16, 2007, it knew that he had used FMLA the previous day, and it was also aware he had frequently used such leave in the past and was looking for any excuse to terminate his employment.  In her affidavit executed on January 6, 2011, Elaine Wise, Volvo's director of operations, acknowledges both that Mr. Johnson used FMLA leave on October 15, 2007 and that he had used 35 days of FMLA leave between June and October, 2007.  There is

-10-

also evidence in the record that Mr. Johnson was terminated once before, and then reinstated, for using FMLA leave; that Volvo tried unsuccessfully to discipline him in March, 2007, for fraudulent use of FMLA leave (which was based on an unfounded factual assertion about his use of leave on November 26, 2006); that it attempted to discipline him in March, 2007, for an incident that, according to his testimony, never occurred; and that it issued two written disciplinary actions against him in April, 2007, again based on events that did not take place.  This sequence of events, interspersed with Mr. Johnson's continued use of FMLA leave, could lead a reasonable juror to conclude that there was not simply a temporal relationship between the termination and Mr. Johnson's use of FMLA leave, but a causal one as well.

    This conclusion is reinforced by the evidence about how Volvo allegedly treated other employees under its "false, vicious or malicious" statement policy.  According to Mr. Johnson, the most glaring example of disparate treatment occurred when Volvo issued its finding that he violated work rules on March 1, 2007, following its investigation of a female co-worker's complaint that he had driven a reach truck toward her.  He contrasts Volvo's handling of that incident with its reaction to his similar complaint that Mr. McNichols almost hit him with a reach truck on July 25, 2007, the incident which led to his termination.  In the first instance, despite the absence of a hearing, Volvo credited the other employee's statement and warned Mr. Johnson that further violations of work rules would lead to his discipline, and perhaps even to his being fired, whereas in the second instance, Volvo found Mr. Johnson to have lied about the incident and then fired him.  He also points to other incidents which show that his complaints were rarely taken seriously or investigated, while every minor complaint directed

toward him became a major issue.

To be "similarly situated" in the context of employee discipline, the individual or individuals with whom a plaintiff seeks to compare her treatment must be nearly identical in all *relevant* aspects. Noble v. Brinker Int'l, Inc., 391 F.3d 715, 728-29 (6th Cir. 2004)(internal citations and quotation marks omitted). This means that the plaintiff and any other non-protected employee "must have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." Mitchell v. Toledo Hosp., 964 F.2d 577, 583 (6th Cir. 1992).

Construing all inferences in Mr. Johnson's favor, it can be inferred that the same group of supervisors and HR personnel were involved in the various disciplinary incidents involving Mr. Johnson and other Volvo employees. It also appears undisputed that each was subject to the same standards, including work rule 13. Thus, the question is whether Volvo's conduct in response to the various complaints made either by or about Mr. Johnson shows that he was treated differently for no apparent reason, a conclusion which would support the inference that a causal connection existed between his use of FMLA leave (which distinguished him from these other employees) and Volvo's decision to fire him.

The crux of Mr. Johnson's argument involves the similarity between Donna Pack's complaint that he drove his reach truck toward her and his complaint that Mr. McNichols nearly hit him with a reach truck. Ms. Pack was not disciplined for making her complaint, which Mr. Johnson claims was false, but when Mr. Johnson complained about an event which actually happened, he was fired. The question is whether a jury could reasonably find that

the two employees engaged in the same conduct and, if so, that there are no differentiating or mitigating circumstances which would distinguish their conduct or Volvo's treatment of them.

These events are not identical in all respects. Ms. Pack did not file a complaint with the Sheriff's office about the incident in which she was involved. However, under work rule 13, it appears not to matter to whom the false or malicious statement is directed, only that it be about a co-worker. Thus, both she and Mr. Johnson made the same complaint; the difference was that in one case, he was the alleged perpetrator, and in the other, the alleged victim. There are facts from which the jury could conclude that Mr. Johnson's version of both events were true, yet Volvo not only disciplined him when it did not discipline Ms. Pack, but it disciplined him on both occasions. Although there is some evidence from which the trier of fact could find that, in both cases, Volvo believed it had discovered the true version of events, and that in both cases it was Mr. Johnson who violated work rules, that evidence is in dispute and the jury would not have to credit it. Thus, there is a factual dispute about whether Mr. Johnson was treated differently from others who found themselves in a materially indistinguishable situation.

The evidence that Mr. Johnson was the subject of other harassment, and that all of his complaints about that conduct were also disregarded and no one was investigated or disciplined, strengthens the inference that he was being singled out for different treatment in the workplace. Certainly, from this record, a jury could infer that had a co-worker complained that Mr. Johnson engaged in conduct such as putting grease on another employee's reach truck, spitting on someone's car window or tampering with someone's work equipment, he would have been investigated and perhaps disciplined or fired. Again, the jury might reach a different conclusion, but that only highlights the

fact that there are genuine issues here for the jury to resolve. Consequently, the Court finds that Mr. Johnson has come forward with enough evidence on the "causal connection" element of the prima facie case to withstand summary judgment, and to require Volvo to come forward with a legitimate nondiscriminatory reason for firing him.

B. The Nondiscriminatory Reason and the Pretext Analysis

At the "legitimate nondiscriminatory reason" step of the analysis, Volvo bears only the burden of production, not the burden of persuasion. Put simply, in order to create an obligation on Mr. Johnson's part to produce evidence beyond that needed to prove a prima facie case, Volvo must simply articulate a "valid rationale" for firing Mr. Johnson. Hartsel v. Keys, 87 F.3d 795, 800 (6th Cir. 1996). It has done so by referring to his alleged violation of rule 13, and that is enough to satisfy its burden. It then becomes Mr. Johnson's obligation to show that a jury could find that reason to be a pretext for discrimination.

In order for Mr. Johnson to demonstrate that Volvo's rationale is in reality a pretext for discrimination, he may establish that the reasons given have no basis in fact, did not motivate the discharge, or were insufficient to warrant discharge. Wexler v. White's Fine Furniture, 317 F.3d 564, 576 (6th Cir. 2003). Mr. Johnson may also meet his burden by showing that Volvo's reason for discharge was not credible. Peters v. Lincoln Elec. Co., 285 F.3d 456, 470 (6th Cir. 2002). Successfully demonstrating that Volvo's proffered reasons are a pretext for discrimination only permits, but does not compel, the Court to find discriminatory intent, which is Mr. Johnson's ultimate burden of persuasion, St. Mary's Honor Center v. Hicks, 509 U.S. 502, 510-11 (1993), but it is enough for him to get past the summary judgment stage.

Here, much of the evidence discussed above is directly relevant to the analysis of this issue.  From that evidence, a jury could find that Mr. Johnson did not make a malicious, vicious or false statement about nearly being struck by a reach truck, but that he was nonetheless fired for that reason.  Although Volvo appears to agree that there may be a factual dispute about whether Mr. Johnson actually violated work rule 13, it argues that it believed he had done so, and that a good faith (but mistaken) belief that a work rule had been violated is enough to prevent the stated reason for his firing to be deemed pretextual.

The Court of Appeals explained this concept well in Niswander v. Cincinnati Ins. Co., 529 F.3d 714 (6th Cir. 2008). There, an employee was fired for allegedly improperly disclosing confidential documents to her attorneys.  She claimed that the disclosure was not only permitted but actually required by her employer's written policies.  The court held that whether she was correct or not was ultimately irrelevant to the question of whether she had been fired for a legitimate, nondiscriminatory reason because she "failed to show the presence of a genuine issue of material fact regarding [her employer's] honest belief that she had violated the company's privacy policy."  Quoting from a prior decision, Majewski v. Auto. Data Processing, Inc., 274 F.3d 1106, 1117 (6th Cir. 2001), the court noted that "'[A]s long as an employer has an honest belief in its proffered nondiscriminatory reason for discharging an employee, the employee cannot establish that the reason was pretextual simply because it is ultimately shown to be incorrect.'"  Consequently, where the decision-maker testifies that he or she honestly believed that the fired employee did something which justified that firing, and the employee does not come forward with any evidence to rebut that testimony, summary judgment in the

employer's favor must be granted even if the event that led to the firing did not actually occur.

The fact that the county prosecutor decided not to press charges could be considered as some evidence that Mr. Johnson's complaint was false.  However, it is a matter of common knowledge that prosecutors decide not to pursue criminal sanctions against alleged perpetrators of crimes for various reasons, only one of which is that the complaining witness lied about what occurred. In fact, it would have been somewhat unusual for criminal charges to be pressed against someone for the type of routine workplace altercation involved in this case.  That would be especially true if the primary evidence consisted of the alleged victim's statement that the incident occurred and the alleged perpetrator's statement that it did not.  Prosecutors are concerned about scarce resources and about proof beyond a reasonable doubt, neither of which has any bearing on whether the matter they are investigating actually occurred.  A reasonable argument can be made that if Volvo relied exclusively upon the decision not to prosecute, it had no sound factual basis for concluding that Mr. Johnson had violated work rule 13.

There is also no evidence, beyond the wholly conclusory statement in Ms. Wise's affidavit, that Volvo conducted a reasonable investigation of this incident.  Her affidavit states, without any elaboration, that Volvo "determined, after an internal investigation, that [Mr. Johnson's] allegations about ... Brad McNichols were 'false, vicious, or malicious.'" She also concedes that the Sheriff's office's decision not to pursue the matter was a factor, although there is no evidence that Volvo ever attempted to learn why the criminal matter was dropped. From this sparse record, the Court simply cannot conclude that there is no factual dispute about whether Volvo really believed that Mr. Johnson lied about the reach truck incident.  Perhaps it

did, and perhaps it can make the jury believe that, but on this record, the issue could be decided either way.

### C. Mixed Motive

Mr. Johnson asserts for the first time in his memorandum in opposition that the "implausible" nature of Volvo's proffered reason reveals at the very least a "mixed motive" for terminating his employment. He argues that the FMLA authorizes retaliation claims where the adverse employment action was motivated by the employee's use of FMLA leave, as well as other permissible factors. See Hunter v. Valley View Local Schools, 579 F.3d 688, 691 (6th Cir. 2009).

An employee raising a mixed-motive claim under Title VII can survive a summary judgment simply by producing evidence sufficient to convince a jury that the impermissible reason was *a motivating factor* for the defendant's adverse employment action. White v. Baxter Healthcare Corp., 533 F.3d 381, 400 (6th Cir. 2008)(citation omitted). Compliance with the McDonnell Douglas/Burdine shifting burdens of production is not required, and the ultimate question on a summary judgment motion is whether there is a genuine issue of material fact regarding the defendant's motivation. Id. at 401-02.

In Hunter, the court of appeals acknowledged that Title VII decisions do not automatically control the construction of other employment statutes. 579 F.3d at 691. The Sixth Circuit continues to apply the Price Waterhouse burden-shifting framework to FMLA retaliation claims. Id. at 692. Under this framework, if a plaintiff presents evidence to establish that the defendant discriminated against him because of his FMLA leave, the defendant must then "prove by a preponderance of the evidence that it would have made the same decision absent the impermissible motive." Id. (internal citation and quotation marks omitted). The court found it unnecessary to decide whether

-17-

<u>White</u> applies to an FMLA retaliation case because the plaintiff had produced sufficient evidence to survive summary judgment even under the more stringent <u>Price Waterhouse</u> standard.  <u>Id</u>. n.2.

The Court need not resolve any of these issues in the context of this motion.  There is enough evidence to warrant denial of summary judgment even without considering whether this is properly a mixed motive case.  Thus, any issues about the proper characterization of the case are better left to the trial stage.

## IV. Conclusion

Base on the foregoing reasons, the Court finds that there are genuine issues of material fact concerning Mr. Johnson's FMLA retaliation claim and that Volvo is therefore not entitled to judgment as a matter of law on that claim.  Accordingly, the motion for summary judgment (#27) is denied.

/s/ Terence P. Kemp
United States Magistrate Judge